Call the next case please. Case number 083541, Marriage of Daniel Lundahl v. Susan. Morning. Morning. Do you want to identify yourself? On to the record, R. Stephen Palachuk on behalf of the felon. Philip Nathanson for the attorney. You will. Fifteen minutes aside. Felon, reserve your time for any rebuttal you may have. Reserve your time for rebuttal. Reserve whatever. Thank you, Your Honor. May it please the Court. Good night. I am R. Stephen Palachuk and with my partner, Susan Palachuk, I represent the appellant, Daniel Lundahl, in this matter. Your Honors, before the Court today are basically three issues. First is whether the retained earnings of a non-marital corporation are marital property. The second issue is whether the amount of the retained earnings as found by the trial judge was against the manifest weight of the evidence and related thereto was whether the award of part of the marital estate to the wife, the respondent, I believe was appropriate against the manifest weight of the evidence. And the final issue before the Court is whether or not the award of attorney's fees to one of the respondent's counsel during the trial was appropriate. As the Court is aware, the trial court in this matter originally found in April of 2007 that the retained earnings of the petitioner's non-marital corporation were non-marital and therefore not subject to division under the Illinois Marriage and Disillusionment Marriage Act. Both of the parties filed motions to reconsider that judgment, and while those motions were pending, the trial court became aware of the third district decision in joint, asked the parties to brief the issues that arose relating to the non-marital status of the retained earnings of the corporation and how that was affected by the joint decision. And after those briefs were filed, and the judge then made a second judgment order ruling in which that was in December of 2007, in which the trial court reversed its earlier ruling regarding the retained earnings of the non-marital corporation and found the retained earnings to be narrowed and then divided the marital estate by giving the respondent 40% of the marital estate or $305,900. The petitioner believes that the judge's original decision regarding retained earnings was the correct decision in this matter. So you don't agree with anything in joint? As it relates to the retained earnings, I believe that would be correct. I believe that the joint decision clearly does not represent the application of the statute, the Alumni Marriage and Dissolution of Marriage Act. Well, what about Schmidt then? Schmidt went on to follow through and did address the statute and said it's just  second step was addressed later in this case. Well, first of all, I think if we look at the Schmidt decision, which of course came down after the judge's decision in our case, as I read the Schmidt decision, the Schmidt court actually held that the corporation in question was marital. And I don't believe that the Schmidt court then misapplied the statute. So I believe that the Schmidt case, there was one small paragraph in the Schmidt case that although it doesn't cite the joint, it refers to joint. And that refers to the first prong of what I would call the two-prong test in joint, which is who controls the corporation. But again, it seems to me in Schmidt, when you read the whole decision, the corporation that they were dealing with, which I believe was the Briggs Corporation, the judge found that that had been purchased with marital property and therefore was marital. I believe that's the case. But that occurred after the marriage. That occurred after. Originally it was a partnership and then it was changed. That's correct. But again, I think that this finding in Schmidt was that marital funds were used to purchase Briggs and therefore it was marital. And I don't believe that the one line, so it's actually only a line about the joint case where it says the control issue was why the court found that the retained earnings in Briggs was marital. I believe in reading that decision it was because the corporation was found to be marital. The statute, Section 503, provides the court with how to determine whether property is marital or non-marital. We all agree that the general rule is all property acquired during the marriage is marital. And under the statute there are certain exceptions. The exception that applies here is 503A6, which is again all the parties agree that Mr. Lundahl's, the petitioner's corporation was formed prior to the marriage. There's no question about that. There's no argument about that. Section 503A7 provides an increase in the value of property acquired, in this case under 503A6, remains non-marital irrespective of whether the increase results from a contribution of the marital property, non-marital property, or personal efforts of the spouse subject to the right of reimbursement. And that's the important part here. The statute protects the non-owner spouse from actions that would allow the money, keep the money in the corporation, do those kinds of things. It has the right of reimbursement. Are you saying this with a straight face? Yes. I am saying it with a straight face. I mean, when I look at the change in the disbursements between 04, 05, and 06, and where the money was hidden, and there's nothing that the corporation did to purchase anything outside, nor did it do anything with that money except that he took it, that leads me to believe that you have to read the joint case with, and say you can't hide the money. And I would agree with that, that you can't hide the money. But the court, in our case, actually found that the marital estate had been adequately reimbursed. No, the judge didn't exactly say that. He says something to the effect, instead of increasing the salary. So he noted with criticism. And then if you realistically look at that, this is less than half of the money they needed to live on. Well, and I saw that, and I don't understand it was less than money, because the judge says they had an opulent lifestyle that they wanted for nothing. This is, the respondent basically had no income. How they lived was on what the petitioner brought to the marriage, and he brought to the marriage substantial amounts of money. We're talking about $680,000 in what was basically a two-year marriage. That's a lot of money for the parties to have lived on. He was not retaining an exorbitant amount of money in the corporation. And, again, we have to look at the statute. If we're going to say that joint is the law in this state, then are we only going to apply it to sub-S corporations? Why not to C corporations? If I own a C corporation and I control it, is there any reason? I don't have to distribute all the money to myself at the end of the year. But that's not before us. Well, but we have to, I understand that, but we have to look at what the results of the joint decision would be. And the joint decision would mean that on the day somebody got married, that their non-marital corporation basically became marital. Because, I'm sorry. I was going to say the effect of the joint decision, though, is to prevent a fraud from being perpetrated. Isn't that true? Because what happens in this case, your client was basically using this corporation as a piggy bank. When he needed more money, he'd order a distribution. He had to answer to no one. He did what he wanted to do. But he did have to answer to the court. Because the court, if the respondent had asked for contribution, and certainly the trial judge covered this issue, even though the respondent did not ask for it, covered it in his first decision, which is he could have looked at the situation and said, the marital estate was not adequately reimbursed. He could have said that easily. Evidence could have been brought as to was the salary, were the draws fair and equitable. That could have been brought before the court. In effect, it was brought before the court because at the trial, obviously those kind of things came in. How much was disbursed? What was the standard of living? All of that. And it just seems to me very clear, one, that the trial court found that the marital estate was adequately reimbursed. And secondly, therefore, based on the statute, and again, reading the statute as a whole, as the trial judge did, he found that if you took the position that the respondent did in the original decision at trial, that therefore you wouldn't, that certain sections of the statute, the reimbursement sections, would have no meaning. Well, counsel, let me ask you. How do we write this, even if we take your position? Can we just ignore joint and Schmidt? Do we just ignore them and say they don't apply? When you've got a second and a third district saying just the opposite of what you're saying. I certainly think that this court can say that neither the joint court or the Schmidt court, and somewhat, again, I have to disagree with you on the Schmidt opinion, because I do believe that they ruled that it was a marital asset, and therefore not subject to the same rule that joint gave. I just think the joint court was wrong. I don't think they looked at the statute. The decision doesn't mention the statute anywhere in the decision. It also looks to Wisconsin law. Wisconsin has a completely different, I think the court even sort of points that out, different set of parameters for deciding marital, non-marital. I think they call it exempt property up there. So, again, what I'm asking this court to do is to apply the statute that we have that's been thought through by the legislature, that there have been rulings before this, although, again, joint says it's a first impression, and I certainly won't argue with that, that this particular issue in this particular form hasn't come up before. But the joint court had it fairly easy, because they could say, well, he didn't own, they could talk about all these things, but they didn't have to worry about finally deciding whether it was marital or non-marital, because he didn't own, he owned a third of the corporation. Again, Your Honor asked me about the piggy bank issue. I think that's resolved very simply by the contribution part of the statute. And certainly at any trial of any matter, such as the trial we had in this case, the court can certainly decide if the contribution wasn't enough. Is there an error made in the computation of the amount of the earnings? Yes. Well, again, there is nothing, there's a lot in the record that would allow everybody to have calculated that amount, but the trial judge didn't do that, and the parties, I have to say, didn't do a very good job at trial of that, because of the way the issues were presented. But to take the final argument of the respondent and use that number without looking back at the record, and we've got to remember here, both parties asked the court to reopen the proofs so that we would have a better handle on what the retained earnings of the corporation were. Clearly, it seems that the respondent took approximately the amount that was in the bank account at some point and said that's the retained earnings. Neither the trial judge, the trial judge did not look at how much was in the bank account or how much were the retained earnings of this corporation. Well, I think he did, because he redistributed some of it. Well, but he didn't, there's nothing in his decision that says, or anywhere. But he did redistribute. When you say redistributed, he made a change in the. . . Correct. He gave the respondent 100% of the marital estate, $75,000 the first time around. Right. And then he gave her 40% of the marital estate the second time around, which amounted to $300,000, whatever, $5,900. And I would make the further argument there that if 75,000 was enough the first time around, how did it all of a sudden become 300,000 the second time around? That makes absolutely no sense to me, and I think it's an absolute abuse of discretion. Again, the trial judge, we have to look at his opinion. He wrote a lengthy, I certainly believe well-thought-out opinion the first time in the first decision and said that 75,000 was a large amount of money and it would certainly get the respondent to the point where she would be employed. They asked for maintenance. He denied the maintenance. So, again, even if the retained earnings were a substantial amount of money, that doesn't mean that the respondent gets more of an amount of money, a higher amount of money when the court redistributed or changed its opinion based on the joint case. Your Honor, as the final matter, I just want to briefly touch on the fees paid to Mr. Kelsheim. Because the court knows that when somebody comes in, when an attorney comes in under the statute for interim fees, that the statute provides is a non-evidentiary hearing except on good cause shown. And I believe that based on the response that the petitioner filed, there was good cause to have an evidentiary hearing. I've set forth in my brief a number of the reasons for that. There were petitions that Mr. Kelsheim filed that had no bearing on the case. He was asking for fees for what the court found was not an ancillary matter. The petitioner was never allowed to review the fees that were presented, never allowed to review the bill. And apparently the court awarded the respondent's attorney fees. The respondent had already paid to him. He indicated, Mr. Kelsheim, that he had gotten $12,500. The court awarded him $14,500. My math is right. That's $27,000 on a billing for $14,500. That makes no sense to me either. I believe that the court would have either properly held an evidentiary hearing at that point to determine if the fees were appropriate or, secondly, reserved the issue of the fees until a contribution hearing. Thank you. Thank you. May it please the Court. Good day. As the Court knows, counsel must show that the trial judge's classification on rehearing of the retained earnings as marital property was contrary to the manifest way of the evidence. I didn't hear counsel mention one item of evidence that showed that the trial judge's conclusion was contrary to the manifest way of the evidence. As the Court also knows, Mr. Lundahl owned 100% of this company and had absolute control and, as Justice Smith said, exercised absolute control. Drew money when he wanted to, took distributions when he wanted to, especially after the separation, over a quarter of a million dollars put in a separate account. There's just no dispute about that on this record. I also believe that Justice Smith's reading of the Schmidt case is correct and that counsel's reading is incorrect. There was more involved in the Schmidt case than just this company, Bricks, because the husband had purchased properties that were alleged to be non-marital, even though it turned out the properties were purchased with distributions that were clearly income under 503A8. And the question in the Schmidt case, there were two questions really, were the distributions from this premarital company, Colonial, that were used to buy the properties and his interest in this company, still non-marital even though they came out of the retained earnings of this company, Colonial. And what the appellate court said in the Schmidt case was under 503A8 that the husband has the burden of showing that these monies were not attributable to his personal efforts. There is nothing in this record in support of Mr. Lundahl to show that what is characterized in this case as retained earnings were not attributable to his personal efforts. In fact, the evidence is whose other efforts could they be attributable to? He ran the company, he owned 100% of it, the company was him. So under the statute, the trial judge was correct in concluding that these retained earnings were marital property and correct in awarding 40% of it. I want to say that not only do I agree with Justice Smith that Schmidt and Joint are controlled, and I'm not saying the court has to go outside of Illinois because there are two Illinois cases, recent ones on the point, that are dispositive. But if the court looks, and the parties have cited all these cases all over the United States, if the court looks at the law across the United States, there isn't one case where the husband owns 100% of the company, exercises total control of the company, leaves money in the company as so-called retained earnings, and the court says, well, aha, it was his non-marital company, therefore it belongs to him. Where there's 100% ownership, the law is uniform, not only in this state, but across the United States, that the retained earnings are the income of the husband. That's what this judge concluded after reading Joint. But the Schmidt case holds the same thing. What about his argument as to other corporations if it wasn't a subchapter S? Well, I think the argument, I would respond this way, Justice. The case cited by the husband, the Kennedy decision from 1981, which, by the way, predated by two years, this statutory provision, 503A8, dealing with the personal efforts of the husband, specifically says, we think it proper to look past the corporate form and regard Robert as a substantial owner of the music store themselves. I think whether he had not made a subchapter S election and left at a C court, or made the subchapter S election, he still owned 100%. He still had total control of the company. And he still could elect to pay himself a salary of $50,000 and take money out as dividends or anything else when he chose to take money out. I don't think, yes, Joint and Schmidt deal with subchapter S companies, if hypothetically this involved a C court, which as the court pointed out, it doesn't. That's not before this court. But if it did, I don't think functionally when you're dealing with solely owned companies that a court in this situation would anything other than look at the substance of what is involved here. This court awarded 40% of $740,000 to my client. The evidence was that in 2006 there was $980,000 in the bank account. I don't think one could conclude, because the abuse of discretion standard applies to the allocation of percentages, that the trial judge abused his discretion by allocating a 40% percentage to these monies, given the amount of money involved and given what the husband was allowed to still retain. Last but not least, counsel cited sections 503A6 and A7 of the statute, property acquired before the marriage and increase in value of property acquired before the marriage. This claim is not based on those sections. Neither my client nor the trial judge awarded the wife or the ex-wife the increase in value of the corporation. The corporation wasn't valued at trial. This was about section A8, income from property acquired before the marriage. That is not attributable to the personal effort of the spouse. There is nothing in this record to show that under A8, that this money that was retained in this corporation was not from the personal effort of Mr. Lungdo. Therefore, it was properly classified as marital property, it was properly distributed, and unless the court has any further questions, I would rely on our brief to affirm the judgment below. Thank you. Thank you. Counsel speaks of the provisions of A8. A8 provides income from property acquired through a method listed in Paragraphs 1 through 7 above, 1 through 7 of this subsection if the income is not attributable to the personal efforts of the spouse. Retained earnings in a corporation are not income. They are the property of that corporation. And if we apply the statute to this case, then what the respondent should have done and what the court covered in their first, in its first opinion, it should have been an issue of contribution. Because income in the corporation is not owned by the shareholders. It is the property of the corporation. If the corporation has a purpose for retaining it. Well, there was evidence at the trial. I mean, this is a two-year marriage. So what? That's one point I didn't. Right. If the court is saying in those two years he really didn't go out and buy a building with this money, sure he didn't. That doesn't mean the third year he wouldn't. It doesn't mean that he didn't buy some things, that he wasn't retaining it. In fact, respondent testified that if they had lost one customer, I think her testimony was, well, they would have had to have fired the two employees to cover that to keep the company going. So there was a reason to retain earnings. And, again, I think we need to look at the statute. The fact that joint, the third district made a ruling in joint, and actually it was a two-prong test, and nobody in this case at the trial level, the trial judge, did not look at the second prong of that test. But, and Schmidt didn't either for that matter. And I just looked at the Schmidt decision again. And, again, I believe that. Just when he redistributed the funds, he did look at the second factor, because he wouldn't have redistributed them unless he looked at it. Well, I don't believe he says that in his opinion anywhere. He just talks about the trial judge you're referring to. The trial judge just refers to the fact that Mr. Lundahl owned 100 percent of the corporation. The position on 100 percent of the corporation does not state anywhere in there as to, you know, he talks about factors, but he doesn't go through what the factors were. He certainly doesn't say, the trial judge doesn't say why 75,000 was enough the first time and $305,900 was appropriate the second time. Thank you for your attention. Thank you. Thank you. The matter will be taken under advisement.